Judge Fletcher and myself, we want to welcome Judge Pollack to this panel. Judge Pollack is from the Eastern District of Pennsylvania, and he's undertaking this assignment, in addition to his work at home, and we appreciate his assistance and welcome his participation. Thank you, Judge. I'm gratified to be here. We'll call the first case, and it's Brown v. Hand. Ready? May it please the Court, good morning. My name is Amber Cottingham, and I'm a certified law student at UC Davis School of Law. With me today is my supervising attorney, Carter White, of the King Hall Civil Rights Clinic. Together, we represent the appellant, Mr. Brown, in his appeal from the district court's summary judgment in favor of MTA bars. Your Honor, this case is about the dispute over whether the defendant was deliberately indifferent to Mr. Brown's serious medical needs and whether he suffered substantial harm as a result of that deliberate indifference. Mr. Brown suffers from asthma and has his whole life. Since he's been incarcerated, he's been at the mercy of the MTAs and the doctors at the prison to provide him the medical treatment necessary to deal with that affliction. Well, when you say he's been at the mercy of the MTAs, it's not the job of the MTAs to fill out prescriptions, right? That is correct, Your Honor. Only a doctor can do that. That is correct. So the MTA can't do anything unless they have a prescription. And the particular MTA involved here was what was that person's name? Bars or something like that? Bars, yes, Your Honor. The record shows that as soon as they got a prescription, they filled it, right? That is correct. So where is the deliberate indifference? Your Honor, the deliberate indifference is in the defendant's failure to submit Mr. Brown's repeated written requests to the pharmacy. Well, just a minute now. How can the MTA submit to the pharmacy? I thought we agreed that only a doctor can give a prescription to the pharmacy. Yes, Your Honor. On April 12th, Mr. Brown spoke with Dr. Busey regarding his allergies and asked Dr. Busey at that time to reissue his prescription for his asthma inhaler, the Ventolin inhaler. And at that time, Dr. Busey said he would take care of it. Therefore, Mr. Brown was following proper procedures in requesting a refill of that prescription. I know that, but if that doctor didn't take care of it, it's not the MTA's fault. That's correct, Your Honor. However, if, according to the defendant's own declaration, the chain of prescription requests, the inmate gives her the prescription request, she turns it into the pharmacy. If the prescription is expired, the pharmacy will write expired on that slip and turn it back to the MTA, who will then give it back to the inmate. And then at that point, the inmate is on notice that he needs to request another doctor's appointment. The deliberate indifference here is that... All that was done here, wasn't it? No, it was not, Your Honor. In other words, well, he saw a doctor and he got it. At least the doctor said he'd give him another prescription, right? On April 12th, he spoke with a doctor who said that he would take care of his prescription. Right. However, the deliberate indifference here is that MTA bars did not submit his requests, his repeated written requests to the pharmacy. Therefore, the pharmacy didn't write expired on the slips, give it back to the MTA, and he did not know that his prescription had not been renewed. Are you saying the pharmacy doesn't know when a prescription expires? That doesn't make any sense to me. I'm sorry, Your Honor. The pharmacy writes, will inform the MTA that the prescription is expired. So if the MTA does not turn in the inmate's prescription refill request... Turn it in to whom? To the pharmacy. We're saying that the indifference lay in Bart's repeated failure to transmit to the pharmacy? Yes, Your Honor. Any request for that? Yes. Mr. Brown had submitted as many as four written requests to the defendant, as well as had conversations with the defendant regarding how serious his need was and that he needed to have his asthma inhaler. So the defendant knew that Mr. Bars needed his inhaler. And according to the pharmacy records, there was no indication that they had received any requests. And, in fact, in his declaration, Mr. Brown states that he had a conversation with one of the MTAs who told him the pharmacy had not received any of his requests. Isn't the real negligence the cause of this? Is that the doctor who said he would renew the prescription didn't do so? Originally, Your Honor... Where all the fault lies? No, Your Honor. If the doctor had done that, everything would have been okay. Because as soon as the doctor wrote a new prescription, within days it was filled, right? See, I don't understand all this rigmarole about going through the MTA and the pharmacy knowing this and not knowing that. It's very clear to me that the pharmacy fills a prescription when the doctor says fill the prescription. It's up to the doctor to do so, and the doctor didn't do so here, right? Regardless of what Mr. Dr. Busey's actions are, according to her own declaration, the defendant is the middleman between the pharmacy and the inmate. Well, that wasn't true here, because the inmate spoke directly to the doctor and said, I need a new prescription. The doctor said, I'll fill it. So there was no middleman there. The doctor does not give the inmate directly the prescription. The inmate has to go to the MTA window to collect the prescription. And so because of the way the procedure is set up, the inmate has to go through the MTAs in order to receive a prescription. Let me see if I understand. There are really sort of two sets of interactions. The plaintiff initially met with the doctor, and according to the plaintiff's testimony, the doctor said, yes, I'll do something about the prescription. And so the plaintiff expected there would be a response, then submitted written requests to the defendant MTA. Yes. And nothing happened. And your position is that since the records of the pharmacy show no record of a request having been submitted, your submission is that the failure and a repeated failure by BART to submit to the pharmacy meant that there was never any response saying, well, the prescription's expired, so that the plaintiff was unaware of the expiration? That's correct, Your Honor. Is that correct? Yes. And but your theory, then, is that it was the repeated failure by BARTs to submit? Yes, Your Honor. Or at least the fact finder could find there was a repeated failure. And does that add up to deliberate indifference, or is that simply negligence repeated two or three times? Your Honor, under the standard of deliberate indifference, the Court has stated that deliberate indifference is where an official knows of a need, medical need, and disregards it. And in this situation, there are several inferences that can be drawn from the facts presented by Mr. Brown. One of those is that after so many written requests and repeated verbal requests and Mr. Brown also inquired daily at the NCA window that this could be nothing else besides deliberate indifference. Counsel, I'd like you to turn your attention to whether this is a serious medical condition, because I think it has to be deliberate indifference in respect to a serious medical condition. Yes, Your Honor. Under the Estelle v. Gamble definition of a serious medical need, a serious medical need is one in which failure to treat that need could result in further significant injury. Mr. Brown prescribes a Ventolin inhaler on an as-needed basis in order to prevent a further significant injury. Also, in McGuckin v. Smith, this Honorable Court has stated that a serious medical need could be defined as one in which a reasonable doctor or patient finds it worthy of comment or treatment. The prison doctors have found Mr. Brown's asthma worthy of treatment, which is why he has a Ventolin inhaler prescription in the first place. But also, Mr. Brown finds it worthy of comment or treatment, and that's why we're here today. Also, the Court stated that a serious medical need is one in which the patient or the medical need affects a person's individual, excuse me, daily activities. And breathing is one of the most fundamental of daily activities. If you can't breathe, you certainly can't do anything else. At the time he met with the later doctor, the doctor said that he was having no respiratory problems at that time, so that there wasn't, at least there was no permanent harm. And that's correct, Your Honor. However, the courts have not stated specifically that permanent injury is required. I see that my time is running out, if I may conclude. Just a second. Because there are disputed issues of material fact in this case regarding whether Brown has a serious, objectively serious medical need and whether the defendant was deliberately indifferent to that medical need, we ask respectfully that you reverse the district court summary judgment and remand this case for trial. Thank you. All right. As you say, you've used up your time, but we'll give you, if you need it, one minute for rebuttal, all right? Thank you very much, Your Honor. All right. Let's hear from the, I guess it would be the State, huh? Good morning, Your Honors. May it please the Court. I'm Sandra Loosage with the Attorney General's Office, and I'm appearing on behalf of the defendant appellee, Linda Bars, in this case. Appellants contend that the district court erred in finding that there was no genuine issue of material fact in this case. Rather, what the district court did find was that the plaintiff did not meet his burden in this case of demonstrating deliberate indifference, nor did he meet his burden in finding that Mr. Brown suffered harm as a result of a delay in his receipt of a Ventolin inhaler. The district court, however, appellee submits to this Court that the district court's decision should be affirmed because Mr. Brown has failed to allege a single fact from which a reasonable trier of fact could infer that Ms. Bars acted with deliberate indifference, acted recklessly with regards to these refill prescriptions, and did so in conscious disregard to his medical need. If she several times, if she several times failed to forward through the process the request for the inhaler, isn't that a set of facts that a fact finder could draw the inference from, that this was a person who just didn't give a name? Well, there's no specific facts that she failed to process or forward those requests to the pharmacy. Well, wait a minute. There are the declarations of the plaintiff that he told the MTA on several occasions, right, about it, and then there's the fact that the pharmacy never received that. There's a clear inference to be drawn from that. And on these motions, we have to draw the inference in favor of the non-moving party, don't we? So when you say there's no fact, I'm not sure I agree with you, because there are at least strong inferences. There are strong inferences. But in Taylor v. List, the circuit held that the plaintiff had to come forth with specific facts, not conclusory allegations. In his declaration. Well, they're not conclusory allegations. They're specific facts. He says, I told the MTA on this date. I told the MTA on this date. I told the MTA on this. Those are specific facts. He did allege a specific fact that on. Not allegations. He swore to them. That's admissible evidence. It goes beyond allegations. But there is no specific facts that Ms. Bars deliberately destroyed it as alleged in his complaint. You don't have to deliberately destroy it. You could sit on it. It would have the same effect, right? Right. But you have to show that she acted in some sort of conscious disregard. There's no evidence that she even read the request for refills. That itself could be a matter of, you know, every time she gets a prescription request, she doesn't read it. She just throws it in the round file, right? No. There is. Every day at 2 p.m., there is undisputed evidence that the request for refills are taken over to the pharmacy, and the pharmacy in turn will fill valid prescriptions and return to the MTA for distribution to. In this case, the pharmacy never received it, right? In this case, right. And it's not reasonable. Or did it break down at the MTA, right? Oh, no. It could have broken down at the pharmacy. It could have broken down at some other MTA. But the reasonable inference is it broke down at the MTA. But not necessarily Ms. Bars. He alleges that he gave the request. Not necessarily. But the question is whether an inference could be drawn that it was she. Well, given the vague and conclusive allegations alleged by Mr. Brown in this case, I don't think it's a reasonable inference that it fell, the ball dropped with MTA Bars in this case. Ms. Wilson, let me suppose a situation to you. Suppose you found yourself in the unusual position of representing the appellant in this court. Not in this litigation, but in some other litigation. Your office has many cases. And you filed a notice of appeal by submitting it to a deputy clerk of this court. And in due course, your appeal was dismissed as untimely. And why so? Because the records of this court showed that your notice of appeal was never in fact documented. Would that might cause some harm to the State if your case was thrown out. So you had, in fact, filed a notice of appeal timely within the calendar. Could not one draw an inference from that that somebody in the clerk's establishment had failed to file your notice of appeal? I suppose that happened several times. Again, in this case, it would have to have happened several times. But without specific facts of the failure to file the appeal, you can't infer that the, I guess, the attorney in this case, in your scenario, failed to timely file it without specific facts. There's no question that the attorney, yourself, submitted a piece of paper in time. But some nameless bureaucrat or group of bureaucrats, you would allege, failed to get the piece of paper onto the docket. And therefore, Judge Tshishima entered an order dismissing the appeal. You wouldn't have done that, would you? But let's assume the judge would. Does that have an ethical situation from the point of view of the State? It could be. I mean, and there could be harm that can result. But in this case, there wasn't significant harm that resulted to Mr. Brown as a result. No harm resulting to him? He alleges that he did suffer an asthma attack. He did submit a declaration that his cellmate witnessed this alleged asthma attack. But there's no medical documentation that he summons help as a result of this asthma attack, nor did his roommate summons help as a result. That gets us in, I mean, to the second question, which is the the harm, right? Which is your guess. I guess it's your position that there was no no substantial injury. Right. It is our position that in fact, he did suffer substantial injury. He would have summoned some sort of medical attention or had his roommate given the allegations. He alleged that he was gasping for air and almost died. But yet his roommate didn't feel it was worthy of comment. It wasn't worthy of summoning prison officials to help assist him in this case. And furthermore, the doctors who saw him almost two weeks later found that there was no permanent damage. He had unlabored in breathing. And then he only had mild asthma and then therefore prescribed a refill of his prescription. Counsel, you and opposing counsel seem to have a different standard as to what a serious medical condition is. I think her contention is that if there is a danger of harm, that that's enough. And you seem to be asserting that harm must have occurred. Is it? No. What do the cases tell us? Counsel is correct. The cases say that, you know, you have to be at a substantial risk at harm. And we don't dispute that asthma is a serious medical condition that could result in a life-threatening situation. But in this case, it didn't. There is vague and conclusory evidence that he suffered these asthma attacks. But there was no medical documentation to support his claims that he did suffer that. And therefore, the district court found that there just wasn't enough evidence to support his claims. But I do agree with opposing counsel in regards to all you need to show. But what the standard is. You agree on what the standard is. Yes. I think the evidence would show, and we have to draw it all in favor of the non-moving party, that he had used this inhalator and he'd used it up in a not too long period of time, which would seem to suggest that he had a serious asthma condition. That is correct. I don't contest that he, you know, the asthma is a serious condition. But I do submit to the Court that in this case, there was not enough evidence to demonstrate that defendant Barrs acted with the requisite intent, the deliberate indifference, which resulted in harm to Mr. Brown in this case, and that the medical records don't support his claims that he did suffer harm as a result. And therefore, the district court properly ruled that there was no genuine issue of material fact for which a trier could find it in his favor in this case. The physician's examination was some weeks after this event, the event that Mr. Harris, the fellow inmate, testified about, was it not? Correct. He alleged sometime in June. And it was undisputed that he saw a doctor June 14th. So there's a span of two weeks that the air went out and he did suffer the severe attack. A fact finder might find that a condition which was a substantial one, the evening of the attack, had improved in the intervening time. So that he had been ill and at risk. At risk and then recovered. And then happily recovered. Correct, Your Honor. I see that I am about out of time. If you have any further questions that I can address for you. No.  Thank you, Ms. Lusitch. Thank you. All right. All right, Ms. Cunningham, would you like a rebuttal? I would just like to respond to two things that my opponent addressed in her argument. If I could draw the Court's attention to page 70 of the appellant's excerpts of record. At the first line, Mr. Brown says, Having personally spoken to MTA bars a number of times regarding my medical situation, MTA bars had direct knowledge of the medical distress I was in and my need for a ventral inhaler to treat my condition. Is this in his affidavit? Yes, Your Honor. It's in Mr. Brown's declaration. So this addresses her contention that it could have been other MTAs. Regardless of what the other MTAs knew or didn't know, Mr. Brown specifically states that he had conversations with the defendant and that the defendant was aware of his medical condition. And the second thing I would just like to bring to the Court's attention is that Mr. Brown's complaint is a verified complaint and, therefore, is also admissible evidence. And in his complaint, he specifically lays out the facts regarding his severe asthma attack in June and that he was not able to receive medical attention. So, therefore, the lack of medical records would support his statements. That's all. Thank you very much. All right. Thank you. We thank both counsel for their argument. And we also thank the King Hall Legal Clinic for this pro bono effort. And this case is now submitted for decision. Next case on the argument calendar is a log or log versus mattress direct.
judges: B Fletcher, Tashima, Pollak